## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ALTON DONTAE JONES,          *
                             *
     Plaintiff,              *
                             *
vs.                          *   CIVIL ACTION NO. 20-00032-B
                             *
ANDREW M. SAUL,              *
Commissioner of Social       *
Security,                    *
                             *
     Defendant.              *

## ORDER

Plaintiff Alton Dontae Jones (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On September 30, 2020, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 15). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 17). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**[1]

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 11, 2016, alleging disability beginning on June 20, 2016. (Doc. 10 at 174, 178). In his applications, Plaintiff alleged disability based on blood clots, status post blood clots, a venous ulcer in his left leg, and status post left rotator cuff surgery. (Id. at 194). Plaintiff's applications were denied at the initial stage. (Id. at 71, 83, 85). Upon timely request, Plaintiff was granted an administrative hearing, which took place on November 6, 2018. (Id. at 38, 93, 140, 165). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id. at 38-52). A vocational expert (hereinafter "VE") also appeared at the hearing and provided testimony. (Id. at 52-56). On March 11, 2019, the Administrative Law Judge (hereinafter "ALJ") issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 21-31). The Appeals Council denied Plaintiff's request for review on November 22, 2019. (Id. at 5). Therefore, the ALJ's decision dated March 11, 2019, became the final decision of the Commissioner. (Id.).

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

> 1. **Whether the ALJ's decision, which incorrectly attributed opinions of the single decisionmaker to the State agency psychological reviewer and assigned those opinions partial weight, requires reversal?**
>
> 2. **Whether the ALJ's decision, which relied on VE testimony that was inconsistent with the Dictionary of Occupational Titles, requires reversal?**
>
> 3. **Whether substantial evidence supports the ALJ's decision not to include depression-related limitations in Plaintiff's RFC?**

## III.  Factual Background

Plaintiff was born on August 10, 1979 and was thirty-nine years of age at the time of his administrative hearing on November 6, 2018.  (Doc. 10 at 43).  Plaintiff completed the twelfth grade in school and can read and write, perform simple addition and subtraction, and count money and make change.  (Id. at 43-44).  Plaintiff is 6'2, weighs approximately 280 pounds, and is right-handed.  (Id. at 44).  He has a driver's license and testified that he is typically able to drive without problems.[2]  (Id. at 44-

---

[2] At the hearing, Plaintiff's right arm was in a sling.  He testified that he had been given the sling at the hospital approximately one week earlier to take pressure off his shoulder, but that he had experienced no problems driving before he started wearing the sling.  (Doc. 10 at 45).

45).  Plaintiff last worked as a short order cook in June 2016, and he has worked as a cook at a number of restaurants dating back to 2001.  (Id. at 46, 207, 235).

Plaintiff has a hereditary protein C deficiency and a history of recurrent blood clots and related health issues, for which he has been prescribed Xarelto, and he has an Inferior Vena Cava ("IVC") filter emplaced.  (Id. at 48-49, 484, 620).  Plaintiff has also been diagnosed with bilateral shoulder impingement syndrome and bilateral acromioclavicular ("AC") joint arthritis, and he underwent surgery on his left shoulder in December 2015.  (Id. at 274, 340, 344).  Additionally, Plaintiff has received injections in both shoulders and testified that he takes Norco as well as muscle relaxers for shoulder pain.  (Id. at 51, 353, 357).

## IV.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[3]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.

---

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The
Commissioner's findings of fact must be affirmed if they are based
upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235
(11th Cir. 1991).   "Substantial evidence is more than a scintilla,
but less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to support
a conclusion."   Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th
Cir. 1983).   In determining whether substantial evidence exists,
a reviewing court must consider the record as a whole, taking into
account evidence both favorable and unfavorable to the
Commissioner's decision.   Chester v. Bowen, 792 F.2d 129, 131 (11th
Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS
10163, at *4 (S.D. Ala. June 14, 1999).

**V.   Statutory and Regulatory Framework**

An individual who applies for Social Security disability
benefits must prove his disability.   20 C.F.R. §§ 404.1512,
416.912.  Disability is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months[.]"  42 U.S.C.
§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).
The Social Security regulations provide a five-step sequential
evaluation process for determining whether a claimant has proven

his disability.  See 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he is not engaged in substantial gainful activity.  Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).[4]  The second step requires the claimant to prove that he has a severe impairment or combination of impairments.  Id.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  Id.  If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four.  Id.  A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his or her past relevant work.  Carpenter, 614 F. App'x at 486.  If a claimant meets his burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that

---

[4] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.  11th Cir. R. 36-2; Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI.  The ALJ's Findings

In the case *sub judice*, the ALJ found that Plaintiff has the severe impairments of osteoarthritis and degenerative joint disease in his right shoulder, protein C deficiency, status post blood clots and a pulmonary embolism, hypertension, and obesity, as well as the non-severe impairments of alopecia and depression. (Doc. 10 at 23-25). The ALJ next found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Id. at 25-26).

The ALJ determined that Plaintiff has the RFC to perform a range of sedentary work with the following additional limitations:

he must be allowed to occasionally alternate between sitting and standing throughout the workday to relieve postural discomfort; he can only occasionally be expected to push or pull with either of his legs or operate foot pedals; he can never climb a ladder, rope, or scaffold; he can never crawl, crouch, or kneel; he can only occasionally climb ramps or stairs or balance or stoop; he cannot reach or lift over his head with either of his arms; he can only frequently laterally reach with his arms; he cannot work at unprotected heights or around hazardous machinery; he cannot work exposed to extremes of temperature or humidity; he cannot work exposed to concentrated dust, fumes, odors, or gases; and he cannot work in poorly ventilated environments. (Id. at 26). The ALJ determined that Plaintiff is not able to perform his past relevant work as a short order cook. (Id. at 29). However, utilizing the testimony of the VE, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as surveillance system monitor, order clerk, assembler, and charge account clerk. (Id. at 30). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 30-31).

**VII.  Discussion**

> **A. The ALJ's errors in attributing opinions of the single decisionmaker to the State agency psychological reviewer and assigning weight to those opinions were harmless.**

Plaintiff first argues that the ALJ erred in "relying upon"

the opinions of a single decisionmaker ("SDM") in determining Plaintiff's physical RFC. (Doc. 11 at 4). Defendant concedes that the ALJ erroneously attributed the SDM's physical RFC assessment to Harold Veits, M.D., the State agency psychological reviewer, and that the ALJ should not have assigned the SDM's opinions any evidentiary weight. (Doc. 13 at 4). However, Defendant argues that these errors were harmless because the ALJ ultimately adopted an RFC far more restrictive than the SDM's physical RFC assessment and had ample other medical evidence to support her RFC determination. (Id. at 4-5). Having carefully reviewed the record, the Court finds that the ALJ's errors with respect to the SDM's physical RFC assessment were harmless.[5]

In this case, the Commissioner used the "single decisionmaker model," by assigning an SDM to make an initial disability determination after consultation with a psychological consultant. (See Doc. 10 at 60-83); see also 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). Because the SDM designation connotes no medical credentials, an SDM is not an acceptable medical source. Siverio v. Comm'r of Soc. Sec., 461 F. App'x 869, 871-72 (11th Cir. 2012) (per curiam). Consequently, forms completed by an SDM are not opinion evidence at the internal agency appeals level, and ALJs

---

[5] "[A]n error is harmless if it does not affect the Commissioner's ultimate decision." Burgos v. Acting Comm'r of Soc. Sec., 705 F. App'x 794, 801 (11th Cir. 2017) (per curiam) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).

should give no evidentiary weight to the RFC assessment of an SDM. Id. at 871; Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam).

"Even so, the Eleventh Circuit has been careful to note that consideration of a single decision maker's opinion is harmless error, as long as the ALJ did not place 'great weight' on the opinion, and the ALJ's decision is based on *other* substantial medical evidence of record." Oden v. Astrue, 2012 U.S. Dist. LEXIS 101170, at *9-10, 2012 WL 3029888, at *3 (N.D. Ala. July 20, 2012) (emphasis in original) (citation omitted); see also Cooper, 521 F. App'x at 807 ("Although . . . the ALJ mistakenly referred to the SDM as a doctor and should not have given any weight to her opinion because she was merely an SDM, any error in this regard was harmless because the ALJ stated that he considered *all* of the evidence in the record, which also included opinions by Cooper's treating physician and the non-examining physician, both of whom were medical doctors and there is nothing to indicate that the opinion of the SDM was anything more than cumulative of other evidence, let alone dispositive.") (emphasis in original).

The SDM completed a physical RFC assessment on October 7, 2016, based on her review of the then-existing records. (Doc. 10 at 67-71, 79-83). In the RFC assessment, the SDM indicated that Plaintiff is capable of lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking

for a total of four hours and sitting for a total of approximately six hours in an eight-hour workday, and pushing or pulling occasionally with his lower extremities. (Id. at 67, 79-80). The SDM opined that Plaintiff can climb ramps, stairs, ladders, ropes, and scaffolds occasionally, and can also occasionally stoop, kneel, crouch, and crawl. (Id. at 68, 80). The SDM further opined that Plaintiff is limited to frequent overhead and lateral reaching with his right upper extremity and occasional overhead and lateral reaching with his left upper extremity, but is unlimited in his abilities to handle, finger, and feel. (Id.). Finally, the SDM opined that Plaintiff must avoid all exposure to hazards due to his treatment with blood thinners but has no other environmental limitations. (Id. at 69, 81).

The ALJ mistakenly attributed the SDM's physical RFC assessment to the psychological reviewer, Dr. Veits, and discussed that assessment as follows:

> As for the opinion evidence, Harold R. Veits, M.D. did not examine or test the claimant but did opine that he retains the capacity for light work, being able to stand or walk up to 4 hours per day and sit with normal breaks up to 6 hours per day. He also opined that the claimant can even occasionally climb scaffolds or reach above his head. However, the medical opinion evidence of record does not support this broad residual functional capacity opinion of Dr. Veits, and the evidence that the claimant has severe osteoarthritis in at least his right shoulder indicates that the claimant could never be expected to climb scaffolds, and could never pick up something weighing 20 lbs. with his right arm. Accordingly, Dr. Veits' opinion can only be given partial weight insofar as it correctly identifies many of the claimant's

limitations but, underappreciates their severity in a
way inconsistent with the general medical evidence of
record.

(Id. at 28).

Although the ALJ misattributed the SDM's physical RFC
assessment to Dr. Veits and, as a result, improperly assigned
weight to opinions rendered by the SDM, it is clear from the ALJ's
discussion of those opinions that she did not "rely" on them, nor
did they "shape[] the ALJ's RFC assessment," as Plaintiff contends.
(See Doc. 11 at 7).  To the contrary, the ALJ largely rejected the
SDM's assessment, noting that it "underappreciates" the severity
of Plaintiff's limitations "in a way inconsistent with the general
medical evidence of record."  (See Doc. 10 at 28).  Thus, while
the ALJ gave "partial weight" to the SDM's opinions, she did so
only to the extent that they correctly identified the existence of
certain limitations reflected elsewhere in the record, while
finding that they underrated the severity of those limitations.

Indeed, the RFC ultimately adopted by the ALJ is significantly
more restrictive than the SDM's physical RFC assessment.  The SDM
(whom the ALJ mistakenly identified as Dr. Veits) opined that
Plaintiff could perform the lifting and carrying requirements of
light work,[6] but the ALJ limited Plaintiff to sedentary work with

---

[6] "Light work involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10
pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

a sit/stand option to alleviate postural discomfort caused by
Plaintiff's circulatory issues. (See id. at 26, 28). The ALJ
also included more restrictive postural limitations, including no
climbing of ladders, ropes, or scaffolds, and no crouching,
crawling, or kneeling. (Id. at 26). Moreover, she added a number
of additional environmental limitations and restricted Plaintiff
to no overhead reaching or lifting with either arm. (Id.). In
assessing Plaintiff's RFC, the ALJ independently discussed the
medical records, the medical opinion evidence (albeit limited),
and Plaintiff's own reports of his daily activities and physical
abilities. (See id. at 26-29). The ALJ's decision reflects that
she did not base any part of her RFC assessment *solely* on the SDM's
opinions, but rather on a review of the record in its entirety.

Plaintiff argues that the ALJ's error is not harmless because
the record contains no medical opinions regarding his physical
capabilities, and that in the absence of such opinions, the SDM
opinions, which were given partial weight by the ALJ, must have
necessarily affected the RFC. (Doc. 11 at 6-7). Plaintiff appears
to specifically challenge findings related to his right shoulder.
He points to his complaints of right shoulder pain and asserts
that no medical provider indicated the frequency with which he
could use his right arm. (See id. at 6).

As an initial matter, the Court notes that responsibility for
assessing a claimant's RFC rests with the ALJ, and the

determination is to be "based on all the relevant evidence in [the claimant's] case record."   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), 404.1546(c), 416.946(c); see also Robinson v. Astrue, 365 F. App'x 993, 999 (11th Cir. 2010) (per curiam) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").  Because the regulations do not require the ALJ to base her RFC finding on an RFC assessment from a medical source, the failure to include a medical source opinion does not necessarily render the ALJ's RFC assessment invalid.  Langley v. Astrue, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011).  Moreover, it is the claimant's "burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations."  Bear v. Astrue, 838 F. Supp. 2d 1267, 1273 (M.D. Fla. 2011) (citations omitted).[7]

The record reflects that on October 30, 2015, Plaintiff was diagnosed with bilateral shoulder impingement syndrome by David A. Stokes, M.D., an orthopedic surgeon at OrthoAtlanta.  (Doc. 10 at 343).   X-rays revealed bilateral AC joint arthritis with subacromial spurs, left greater than right.  (Id. at 343-44).  On December 9, 2015, Dr. Stokes performed an arthroscopic subacromial

---

[7] Plaintiff does not argue that the ALJ breached her duty to develop a full and fair record by not obtaining a medical opinion assessing Plaintiff's physical capabilities.  (See Doc. 11).

decompression and distal clavicle resection surgery on Plaintiff's left shoulder.  (Id. at 345).  Dr. Stokes noted that Plaintiff had "a long history of left greater than right shoulder pain" and would probably need the same surgery on his right shoulder in the future. (Id. at 340, 345).  At a post-operative examination on December 15, 2015, it was noted that Plaintiff's left shoulder was currently in a sling, but he had no swelling or tenderness, appropriate range of motion, grip strength that was strong and equal bilaterally, and an intact neurovascular exam.  (Id. at 333-34).

The record next reflects that Plaintiff was admitted to Thomas Hospital on June 27, 2016, seven days after his alleged disability onset date, with complaints of shortness of breath and soreness in his calf.  (Id. at 360).  Plaintiff reported that he had not been taking his Xarelto due to financial restrictions, and he was found to have popliteal non-occlusive bilateral leg DVTs and acute saddle pulmonary emboli.  (Id. at 405, 432).  According to the emergency department notes of Todd J. Tobiassen, M.D., Plaintiff was "[n]egative for arthralgias, back pain, gait problem, joint swelling, myalgias, neck pain and neck stiffness."  (Id. at 368). On examination, Plaintiff demonstrated normal range of motion, no edema or tenderness, normal strength, normal coordination, and normal muscle tone.  (Id. at 369).  Plaintiff also denied myalgias or arthralgias on June 29, 2016.  (Id. at 427, 433).  During a post-hospitalization visit to hematologist William R. Taylor, M.D.

on July 19, 2016, Plaintiff again denied joint pain and swelling. (Id. at 479).

On August 10, 2016, Plaintiff presented to Coleridge T. Franklin, M.D. at Franklin Primary Health Center and reported "mild-moderate" right shoulder pain that was aching and was aggravated by lifting and movement. (Id. at 471). On examination, Dr. Franklin noted that Plaintiff was tender to palpation over the bicipital groove, had decreased range of motion with flexion, extension, abduction, and adduction, was positive for crepitance, and had positive Neer exams at 150 degrees; however, Plaintiff exhibited normal contour and no bruising or swelling, and his Hawkins, Jobe, and empty can tests were negative. (Id. at 474). Dr. Franklin prescribed a Lidocaine patch. (Id. at 475).

On October 14, 2016, Plaintiff returned to Dr. Taylor, who noted that Plaintiff had "lost 7 pounds since July due to depression because he recently lost his job." (Id. at 482). He also noted also noted that Plaintiff was "[f]ully active, able to carry on all predisease activities without restrictions." (Id. at 483). Nearly a year later, on August 25, 2017, Dr. Taylor noted that Plaintiff denied joint pain and swelling, was "well appearing and in no acute distress[,]" and was "[f]ully active, able to carry on all predisease activities without restrictions." (Id. at 491-92).

Plaintiff presented to Thomas Hospital on January 18, 2018,

complaining of a boil on his back.  (Id. at 579).  The hospital
notes from that visit reflect that Plaintiff had a normal range of
motion.  (Id. at 580).  On March 8, 2018, Plaintiff presented to
Dr. Franklin complaining of right shoulder pain that he rated as
7 out of 10 in intensity.  (Id. at 607, 609).  Plaintiff reported
that the pain was aggravated by lifting and movement, and that
associated symptoms included difficulty sleeping, tenderness,
popping, spasms, and weakness.  (Id. at 607).  Dr. Franklin's
physical examination of Plaintiff was normal, except for
dermatological findings.  (Id. at 609).  Dr. Franklin directed
Plaintiff to take prescription-strength Tylenol.  (Id. at 610).
He also ordered a right shoulder x-ray, the results of which were
negative, revealing no fracture or dislocation and an intact AC
joint.  (Id. at 610, 615).  A physical examination performed one
day later by Vanessa L. Jones, CRNP, showed normal musculoskeletal
strength and range of motion.  (Id. at 623).  Plaintiff again
reported "moderate-severe" right shoulder pain to Dr. Franklin on
May 31, 2018; however, Dr. Franklin's physical examination of
Plaintiff was normal.  (Id. at 612-13).  Dr. Franklin recommended
an MRI and encouraged Plaintiff to exercise.  (Id. at 613).

Despite the absence of a medical opinion regarding
Plaintiff's physical RFC, substantial evidence supports the ALJ's
conclusions regarding Plaintiff's ability to use his right arm.
As reflected above, Plaintiff's complaints of right shoulder pain

were sporadic, his treatment was conservative, and his physical examinations were often unremarkable and included findings such as normal range of motion and normal strength.  As the ALJ recognized, the most recent imaging study of Plaintiff's right shoulder was negative.  (Id. at 27, 615).  Moreover, the ALJ cited information in the record regarding Plaintiff's activities that weighed against a more restrictive RFC, including that Plaintiff is capable of driving and loading a washing machine.  (Id. at 29, 77).  The record also reflects that Plaintiff prepares meals.  (Id. at 77). The ALJ also reasonably concluded that the record does not indicate any deterioration in Plaintiff's shoulders since his treatment with OrthoAtlanta in December 2015 (see id. at 27), and the record shows that Plaintiff was able to work as a short order cook (a light work position that, per Plaintiff's own reports, involved frequent reaching) as recently as June 2016.  (See id. at 53, 207-08, 216, 235).  Indeed, it appears that the cessation of Plaintiff's employment as a cook correlated with his hospitalization for circulatory issues, rather than any shoulder or arm-related complaints.  (See id. at 212 (Plaintiff's statement that he started part-time work at Wintzell's Oyster House in May 2016 and "could have worked full-time during this period and intended to until he got sick [due to blood clots and related issues] and had to quit on 06/20/16")); (see also id. at 225 (Plaintiff's report that his pain first began to affect activities

"[w]hen I had my first blood clot")).  Finally, although Plaintiff
reported shoulder pain in his pain questionnaire, he noted that
his pain was not constant, but instead occurred three to four times
per week and was relieved by Norco for a "few hours" without side
effects.  (Id. at 224-25).

In sum, although the ALJ mistakenly attributed the SDM's
physical RFC assessment to Dr. Veits and thus proceeded to
improperly assign partial weight to the SDM's opinions, the ALJ's
errors were harmless because the ALJ did not rely on the SDM's
physical RFC assessment in crafting Plaintiff's RFC.  Instead, the
ALJ formulated a significantly more restrictive RFC that was
suitably grounded in the record as a whole and supported by
substantial evidence.  Accordingly, Plaintiff's claim must fail.[8]

---

[8] Although Plaintiff has cited evidence in the record which he
claims supports a finding that he is disabled, that is, at best,
a contention that the record evidence supports a different finding.
That is not the standard on review.  The issue is not whether there
is evidence in the record that would support a different finding,
but whether the ALJ's finding is supported by substantial evidence.
See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734,
at *15, 2017 WL 4992021, at *5 (M.D. Fla. Nov. 2, 2017) ("Although
Plaintiff cites to certain test results, notes, and physical
therapy findings as support for her contention that 'there were
objective medical findings that support the doctor's opinions
about [her] limitations', this is, at best, a contention that the
record could support a different finding.  This is not the standard
on review. The issue is not whether a different finding could be
supported by substantial evidence, but whether this finding is.")
(internal citation omitted).

      **B.**    **Substantial evidence supports the ALJ's step five determination that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.**

Plaintiff next argues that the ALJ erred at step five of the sequential evaluation process by failing to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupation Titles ("DOT"), and by relying on VE testimony that was inconsistent with the DOT.  (Doc. 11 at 7-12).

In Washington v. Comm'r of Soc. Sec., 906 F.3d 1353 (11th Cir. 2018), the Eleventh Circuit held that, pursuant to Social Security Ruling 00-4p and the overall regulatory scheme governing disability claims, "ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them."  906 F.3d at 1356.  The Court explained:

> This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT. Once the conflict has been identified, the Ruling requires the ALJ to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict.  The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence.

Id.  The Court stated that an "apparent conflict" is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony."  Id. at 1365.

At Plaintiff's administrative hearing in this case, the VE

testified that, considering an individual of Plaintiff's age, education, and work experience, with all the limitations contained in the RFC (as set forth in a hypothetical presented by the ALJ), there are jobs existing in the national economy that such an individual could perform, namely:

> Surveillance System Monitor, non-governmental, 379.367-010, sedentary, unskilled with an SVP of 2. Nationally jobs would exceed 675,000. Order Clerk, 249.362-036, sedentary, unskilled with an SVP of 2. Nationally jobs would exceed 750,000. Assembler, 723.684-018, sedentary, unskilled with an SVP of 2. Nationally jobs would exceed 425,000. . . . Charge Account Clerk, 205.367-014, sedentary, unskilled with an SVP of 2. Nationally jobs would 825,000.

(Doc. 10 at 55). Relying on the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and that Plaintiff is therefore not disabled. (Id. at 30).

Plaintiff contends that the ALJ erred in relying on the VE's testimony in finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, because the VE's testimony concerning the representative occupations of order clerk and assembler conflicted with the descriptions of those occupations in the DOT. Specifically, Plaintiff asserts that the ALJ was wrong to rely on the VE's testimony that the job of order clerk is an unskilled position with an SVP[9] rating of 2, because

---

[9] The DOT "lists Specific Vocational Preparation (SVP) in terms of the time necessary for a typical worker to learn the job." Hanley

it conflicts with the DOT's description of the job as having an SVP rating of 4, which corresponds to semi-skilled work. (Doc. 11 at 8); see Lozada v. Colvin, 2015 U.S. Dist. LEXIS 24071, at *11, 2015 WL 859119, at *4 (M.D. Fla. Feb. 27, 2015). Plaintiff also asserts that the ALJ was wrong to accept the VE's testimony that the assembler job is sedentary, when the DOT lists the job as being at the light exertional level. (Doc. 11 at 10).

The Court finds that any errors by the ALJ in failing to identify and resolve these conflicts were harmless. Assuming _arguendo_ that the ALJ incorrectly determined that Plaintiff could perform the jobs of order clerk and assembler, the ALJ also found, based on the VE's uncontradicted testimony,[10] that someone of Plaintiff's age, education, work experience, and RFC could perform the jobs of surveillance system monitor (675,000 positions nationwide) and charge account clerk (825,000 positions nationwide). (See Doc. 10 at 30). Plaintiff does not challenge the determination that a person of his age, education, work

---

v. Astrue, 2008 U.S. Dist. LEXIS 121498, 2008 WL 2557496, at *3 (N.D. Fla. June 20, 2008).

[10] In making her step five determination, the ALJ was permitted to rely on the VE's testimony. See Zoslow v. Comm'r of Soc. Sec., 778 F. App'x 762, 765-66 (11th Cir. 2019) (per curiam) (citations omitted); see also Green v. Soc. Sec. Admin., 223 F. App'x 915, 923 (11th Cir. 2007) (per curiam) ("The 'preferred method' for the Commissioner to demonstrate, by substantial evidence, that the claimant can perform other jobs is through the testimony of a vocational expert ('VE').") (citation omitted).

experience, and RFC (as determined by the ALJ) can perform the jobs of surveillance system monitor and charge account clerk. Plaintiff also does not challenge the VE's testimony regarding the numbers of these positions in the national economy, nor could he convincingly allege that the numbers identified are not significant.  See, e.g., Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (concluding 80,000 jobs in national economy constituted a significant number of jobs); Wooten v. Comm'r of Soc. Sec., 787 F. App'x 671, 675 (11th Cir. 2019) (per curiam) (concluding 235,000 jobs nationally was a significant number of jobs); Atha v. Comm'r of Soc. Sec., 616 F. App'x 931, 935 (11th Cir. 2015) (per curiam) (concluding 23,800 jobs nationally was a significant number of jobs).

Given the ALJ's finding, based on unchallenged VE testimony,[11] that there are two other occupations totaling 1.5 million jobs nationwide that Plaintiff can perform given his age, education, work experience, and RFC, any failures to identify and resolve conflicts as to the order clerk and assembler positions were

---

[11] At the administrative hearing, Plaintiff's counsel stipulated to the VE's qualifications and declined to question the VE about any of his testimony.  (Doc. 10 at 53, 56).  Even in his brief to this Court, Plaintiff has not presented any evidence or argument to contradict or question the VE's testimony regarding the ability of a person of Plaintiff's age, education, work experience and RFC (as determined by the ALJ) to perform the jobs of surveillance system monitor or charge account clerk, or the VE's testimony regarding the number of those jobs nationwide.  (See Doc. 11).

harmless.  See Wooten, 787 F. App'x at 674-75 (finding that even if the ALJ erred in relying on vocational expert testimony that conflicted with the DOT in concluding that the claimant could perform the jobs of surveillance system monitor and document preparer, "that error would be harmless" because "the uncontradicted testimony of the vocational expert provided the ALJ with substantial evidence" to support the ALJ's conclusion that Plaintiff could perform the job of final assembler, which existed in significant numbers in the national economy); Estate of White v. Saul, 2020 U.S. Dist. LEXIS 162418, at *46-49, 2020 WL 5351064, at *16-18 (S.D. Fla. Aug. 26, 2020), report and recommendation adopted sub nom. Estate of Vanness-Norvell White v. Saul, 2020 U.S. Dist. LEXIS 162168, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020) (rejecting plaintiff's argument that the ALJ reversibly erred by failing to identify and resolve an apparent conflict between plaintiff's RFC and two of the jobs that the VE testified plaintiff could perform, because the VE identified another job that plaintiff could perform with 926,000 jobs nationally, and plaintiff did not challenge the ALJ's determination that plaintiff could perform that job); see generally Campbell v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 206900, at *14, 2019 WL 6463983, at *5 (M.D. Fla. Dec. 2, 2019) ("Even assuming the reference to the wrong DOT code is more than a simple mistake, because the ALJ identified two other jobs Plaintiff can perform, the error is clearly a harmless one.").

As it would be a waste of scarce judicial resources to remand this case based on errors that did not change the ultimate disability determination, Plaintiff is not entitled to relief on this issue.

### C. Substantial evidence supports the ALJ's decision not to include additional depression-related limitations in Plaintiff's RFC.

Last, Plaintiff argues that the ALJ erred in finding that his depression is not a severe impairment, and in failing to include concentration and social interaction limitations arising from his depression in the RFC assessment. (Doc. 11 at 12-13). According to Plaintiff, had the ALJ included depression-related concentration and social interaction limitations in the RFC, the remaining two jobs of charge account clerk and surveillance systems monitor would have been eliminated as jobs available to Plaintiff at step five. (Id. at 12). In response, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's depression was not a severe impairment and that, even if Plaintiff's allegations of depression were supported, Plaintiff has failed to show that his depression prevents him from performing the unskilled jobs identified at step five. (Doc. 13 at 7-8).

An impairment is severe if it significantly limits a claimant's physical or mental ability to perform basic work activities.[12] 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely,

---

[12] Basic work activities include the following:

an impairment is not severe if it does not significantly limit the claimant's physical or mental ability to perform basic work activities.   Id. at §§ 404.1522(a), 416.922(a).   The Eleventh Circuit has "recognized that an 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"  Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986)).   "A diagnosis alone is an insufficient basis for finding that an impairment is severe."  Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).   "[I]t is [the] Plaintiff's burden to prove the existence of a severe impairment and [he] must do that by showing an impact on [his] ability to work."  Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669, at *13-14, 2013 WL 3901655, at *5 (M.D. Fla. July 29, 2013) (citations

---

(1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b), 416.922(b).

omitted).

At the outset, the Court notes that if the ALJ erroneously finds an impairment to be non-severe at step two of the sequential evaluation process, the error is not fatal if the ALJ finds at least one of Plaintiff's other impairments to be severe and continues through the sequential evaluation process and considers the combined effect of all the claimant's impairments at the later steps.  See Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) ("[T]he only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability."); Ferguson v. Astrue, 2012 U.S. Dist. LEXIS 139135, at *25, 2012 WL 4738857, at *9 (N.D. Ala. Sept. 27, 2012) (stating that, because step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's failure to find an impairment severe at step two is not reversible error where the ALJ finds at least one impairment severe and at later steps considers the combined effects of all of the claimant's impairments).

Here, the ALJ found at step two of the sequential evaluation process that Plaintiff has multiple severe physical impairments, and she then proceeded with the subsequent steps and rendered an RFC finding based on the record as a whole.  Thus, if Plaintiff was merely alleging that the ALJ erred in finding his depression

to be non-severe at step two, the alleged error would plainly be harmless.  However, while he does assert that the ALJ erred in finding his depression to be non-severe at step two, Plaintiff's main contention is that the ALJ erred in failing to include depression-related limitations in his RFC.  (See Doc. 11 at 12).

At step two, the ALJ concluded that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."  (Doc. 10 at 24).  The ALJ cited medical record evidence showing that Plaintiff disclaimed symptoms of depression on multiple occasions, the absence of any treatment for depression, and the fact that Plaintiff did not allege that he is disabled or limited in his ability to work by any mental illness or condition.  (Id.).

In making this finding, the ALJ considered the four broad areas of mental functioning used in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1).[13]  (Id. at 24-25).  The

---

[13] These four areas of mental functioning are known as the "paragraph B" criteria and consist of: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  The limitations set forth in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.

ALJ found that Plaintiff has mild limitations in all four areas of
mental functioning, and that Plaintiff's depression is therefore
non-severe.[14] (Id.). With respect to the first, second, and fourth
functional areas, the ALJ found that the "medical evidence of
record does not indicate that the claimant experiences any
limitations in this metric, but, due to the effects of a depressed
mood and pain on the claimant's concentration ability, the
undersigned finds that a minimal collateral effect might be
detected in" Plaintiff's abilities to understand, remember, or
apply information, interact with others, and adapt or manage
himself. (Id. at 24). Similarly, as to the third functional area,
the ALJ found that Plaintiff's "pain from his physical impairments,
combined with his slightly depressed mood can be expected to exert
a detectible but minimal diminution of his ability to concentrate,
persist, or maintain pace at work." (Id.). Although the ALJ
emphasized that the limitations identified in the "paragraph B"
criteria are not an RFC assessment, she stated that "the following
residual functional capacity assessment reflects the degree of
limitation the undersigned has found in the 'paragraph B' mental
function analysis." (Id. at 25). Having considered the record at

---

[14] See 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate
the degrees of your limitation as 'none' or 'mild,' we will
generally conclude that your impairment(s) is not severe, unless
the evidence otherwise indicates that there is more than a minimal
limitation in your ability to do basic work activities . . . .")).

length, the Court finds that the ALJ's finding that Plaintiff's depression could only be expected to minimally affect Plaintiff's ability to perform basic work activities is supported by substantial evidence.

As noted by the ALJ, the record reflects that Plaintiff denied symptoms of depression during multiple medical visits in 2015 and much of 2016.  (See id. at 264, 272, 335, 342, 443, 479).  The first indication of depression in the record appears in a patient health questionnaire Plaintiff completed at Franklin Primary Health Center on August 10, 2016.  (See id. at 471-72).  On the questionnaire, Plaintiff stated that for several days over the past two weeks (but not more than half of the days), he had experienced little interest or pleasure doing things; feeling down, depressed, or hopeless; trouble falling or staying asleep, or sleeping too much; feeling tired or having little energy; poor appetite or overeating; feeling bad about himself; and trouble concentrating on things.  (Id.).  However, when asked "how difficult have these problems made it for you to do your work, take care of things at home or get along with other people," Plaintiff checked the response that stated: "NOT DIFFICULT AT ALL". (Id. at 472).  The questionnaire was interpreted to indicate mild depression; however, Dr. Franklin made no diagnosis of depression at that time or at later visits.  (Id. at 472, 475, 610, 613). Moreover, reviews of Plaintiff's systems were negative for

30

depression during visits to Franklin Primary Health Center in March 2018 and May 2018.  (Id. at 609, 612).

On October 7, 2016, the State agency psychological reviewer, Dr. Veits, found that Plaintiff has no mental medically determinable impairments.  (Id. at 66, 78).  In making this determination, Dr. Veits noted Plaintiff's reports in his ADLs and at Franklin Primary Health Center "that at times he feels depressed reacting to his physical condition, but that these symptoms do not cause limitations in his functioning."  (Id.).  Dr. Veits also noted that Plaintiff had not had a mental health diagnosis or treatment.  (Id.).

On October 14, 2016, Plaintiff's hematologist, Dr. Taylor, stated that Plaintiff was depressed "due to loss of job," and he noted "[d]epressed mood with congruent affect" on examination.  (Id. at 483-84).  Dr. Taylor's notes from four days later stated: "Second request for psychologist to eval[uate] and provide therapy for depression."  (Id. at 505).  The impressions in treatment notes from Dr. Taylor's office from March 2017, August 2017, and March 2018 also included depression as one of Plaintiff's conditions, although there was no further detail provided and no relevant treatment suggested.  (See id. at 489, 492-93, 621, 624).  On August 25, 2017, Dr. Taylor noted that Plaintiff had "[n]o history of psychiatric disorders, hallucinations or treatment for depression" (id. at 492), and on March 9, 2018, Vanessa Jones, a

nurse practitioner at Dr. Taylor's office, noted that Plaintiff was cooperative and had appropriate mood and affect. (Id. at 624). Additionally, the Thomas Hospital records from January 18, 2018 reflect that Plaintiff had no diagnosis or complaint related to an emotional or behavioral disorder. (Id. at 584).

Plaintiff routinely exhibited appropriate mood and affect, normal speech, normal behavior, normal thought content, normal insight, and normal judgment, and was described as pleasant and cooperative. (See id. at 254, 259, 263, 339, 343, 361, 369, 382, 447, 451, 462, 474, 519, 522, 530, 536, 539-40, 580, 613, 618, 624). Likewise, he was regularly described as active, alert, and oriented, and he denied decreased concentration and displayed good cognition in June 2016. (See id. at 254, 259, 263, 272, 276-81, 286, 288, 290-92, 294, 296, 298, 300, 302-03, 305, 309, 311, 317-18, 320, 336, 339, 343, 357, 360-61, 368-69, 372-73, 376-77, 382, 385, 391, 395, 398, 402, 410, 420, 423, 428, 434, 439, 447, 451, 462, 474, 519, 521-22, 527, 529-30, 536, 539, 579-80, 613, 618, 622-23).

As the ALJ correctly noted, the record reflects that Plaintiff never received treatment for depression or any other mental health condition. Moreover, Plaintiff did not allege, prior to or during his administrative hearing, that he was disabled based in whole or in part on depression or any other mental condition. (See id. at 43-52, 194). Notably, Plaintiff was questioned both by the ALJ

and by his attorney at the administrative hearing, and neither Plaintiff nor his attorney raised the subject of depression or any other mental impairment. (See id. at 43-52). Indeed, the record strongly suggests that Plaintiff's few complaints of depression were due to the fact that he lost his job, and not the result of any underlying mental health condition preventing him from performing basic work activities in the first place. (See id. at 482, 484). As noted *supra*, Plaintiff himself admitted in the August 2016 questionnaire completed at Franklin Primary Health Center that his mild depression symptoms did not make it difficult *at all* for him to do his work, take care of things at home, and get along well with other people, and the record thereafter, which contains only cursory references to depression by Dr. Taylor's office (but none of Plaintiff's other providers), does not reflect that Plaintiff's depression symptoms worsened since he made that statement.

Based on the foregoing, substantial evidence supports the ALJ's finding that Plaintiff's depression is non-severe and the exclusion of depression-related concentration and social interaction limitations from Plaintiff's RFC. Accordingly, Plaintiff's claim must fail.

## VIII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the

parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claims for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

      **DONE** this **16th** day of **March, 2021.**

                          **/s/ SONJA F. BIVINS**
                     **UNITED STATES MAGISTRATE JUDGE**